JWB

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Armando Antonio Marroquin, | No. CV-13-01761-PHX-DGC (JZB) |
| Plaintiff, | **ORDER** |
| v. | |
| Jim McDonald, et al., | |
| Defendants. | |

Before the Court are the parties' cross-motions for summary judgment (Doc. 34, 42). Plaintiff also moves to vacate the Court's June 19, 2014 order dismissing Counts Two and Three as time-barred and the Court's September 12, 2014 order dismissing Wilkinson for failure to serve (Docs. 30, 44). For the reasons that follow, the Court will grant Defendants' summary judgment, deny Plaintiff's motions, and terminate this action.

**I.   Background.**

In the sole remaining claim in this action, Plaintiff alleges that in September 2012 Defendants Fernandez-Carr and Prince (Defendants) violated his First Amendment right of access to the courts by refusing to copy legal documents, including a petition for writ of habeas corpus, exhibits thereto, and grievances. As a result, Plaintiff claimed "the court" denied three of his cases because he was unable to submit documents that Defendants refused to copy.[1]

---

[1] Upon screening pursuant to 28 U.S.C. § 1915A(a), the Court dismissed Counts

1   Defendants move for summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies prior to filing suit (Doc. 34).  Plaintiff opposes Defendants' motion and cross-moves for summary judgment, arguing that he exhausted the remedies available to him and his grievances were improperly screened (Doc. 42).[2]

## II. Summary Judgment Standard.

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968), but it must "come forward with specific facts showing that there is a genuine

---

One, Five, Six, Eight, Nine, Ten, and Eleven; the portion of Count Two relating to grievances and access to the courts; and the portions of Count Seven not related to copying documents.  The Court also dismissed Defendants McDonald, Partain, Minnieweather, Williams, Wilson, and Vasquez (Doc. 6).  The Court later dismissed Counts Two and Three as barred by the statute of limitations (Doc. 28).  The Court dismissed Defendant Wilkinson for failure to serve (Doc. 40).

[2] The Court issued the Notice required under *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response (Doc. 36).

issue for trial," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

### III. Exhaustion.

#### A. Governing Standard.

Under the Prison Litigation Reform Act, a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005). The prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden of showing that there was an available administrative remedy and that the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37 (a defendant must demonstrate that applicable relief remained available in the grievance process). Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner,

shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

If summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge; a plaintiff is not entitled to a jury trial on the issue of exhaustion. *Albino*, 747 F.3d at 1170-71. But if a court finds that the prisoner exhausted administrative remedies, that administrative remedies were not available, or that the failure to exhaust administrative remedies should be excused, the case proceeds to the merits. *Id.* at 1171.

### B.  Applicable Grievance Procedure.

Marroquin is a California Department of Corrections and Rehabilitation (CDCR) inmate. Therefore, the applicable administrative procedures are set forth in Title 15 of the California Code of Regulations, § 3084. CDCR regulations allow a prisoner to appeal any action or decision by a prison official that adversely affects the prisoner's welfare. Cal. Code Regs. tit. 15, § 3084.1(a).[3] In order to exhaust available administrative remedies within the current system, a prisoner must proceed through the following levels: (1) the inmate submits a grievance on Form 602[4] to the appeals coordinator at the institution for processing and receives a first level decision, unless the first level is exempted by the appeals coordinator; (2) if relief is not granted at the first level, the inmate must file an appeal and receive a second level decision; and (3) if relief is not granted at the second level, the inmate must file an appeal and receive a third level decision from the Chief of the Office of Appeals. *See* Cal. Code Regs. tit. 15, §§ 3084.2(a)-(d), 3084.7. The third level decision by the Chief of the Office of Appeals

---

[3] Prior to January 28, 2011, a prisoner had to pursue an appeal through four levels, one "informal" and three "formal." *Manning v. Bunnell*, No. 2:12-CV-2440, 2014 WL 1338312, at *2 (E.D. Cal. Apr. 2, 2014). The CDCR's administrative exhaustion procedure was modified by amendment on December 13, 2010, becoming effective on January 28, 2011. *See id.*, at *3.

[4] Although entitled "Inmate/Parolee Appeal," the 602 Form memorializes the inmate's grievance at the first-level. *See, e.g., Trotter v. Haws*, 2010 WL 5891059, at *2 (C.D. Cal. Dec. 13, 2010) (noting that "[t]o initiate the process, an inmate must describe the problem and action requested in a 602 grievance form ('Inmate/Parolee Form')"); *Coreno v. Armstrong*, 2011 WL 4571756, at *9 (S.D. Cal. July 29, 2011) (equating "602 form" as "grievance" under California administrative scheme). Appeal and grievance are, at appropriate times, used interchangeably in the administrative process.

exhausts the inmate's administrative remedies. *See id.*, § 3084.7(d)(3).

CDCR regulations require a prisoner to describe "the specific issue under appeal and the relief requested." *Id.*, § 3084.2(a). The prisoner is also required to list "all staff member(s) involved and . . . their involvement in the issue" or provide any available information that would assist in identifying the staff members involved. *Id.*, § 3084.2(a)(3).

### C.     Discussion.

Defendants contend that, for his denial of access to the court claim, Plaintiff had the opportunity to utilize the grievance procedure available to LPCC inmates, but failed to do so, and, as a result, failed to exhaust his administrative remedies. Plaintiff responds that he submitted two separate Form 602 appeals concerning his claim and that these attempts at exhaustion were improperly processed.

### 1.     Plaintiff's September 16, 2012 Form 602.

Plaintiff submitted a Form 602 on September 16, 2012, alleging that LPCC staff denied his request for legal copies, which precluded him from copying his petition for writ of habeas corpus (Doc. 42-1 at 7). The parties agree that this Form 602 was "cancelled," which is a term of art utilized in the CDCR regulations. The parties also introduce the notice provided to Plaintiff explaining why his Form 602 was cancelled. Grievance Coordinator Williams explains in the notice that Plaintiff did not suffer a material adverse impact from the failure to receive copies because on the day he made the request he informed Prince that his deadline had already passed and, in any event, Plaintiff received his copies (Doc. 46-1 at 11). As a result, Williams determined that no staff action resulted in any harm to Plaintiff and his Form 602 was cancelled (*id.*).

The screening form completed by Williams differentiates between reasons for rejection and those for cancellation (*id.*). In the comments section of the form, Williams indicated: "Cancelled-No adverse material impact" (*id.*). But "no material adverse impact" is listed as a reason for rejection, not cancellation. *See* Cal. Code Regs. tit. 15, § 3084.6(b), (c). CDCR regulations require the prison official to notify the inmate "of the

correction(s) needed for the *rejected* appeal to be accepted." *Id.*, § 3084.5(b)(3) (emphasis added). The same is not required for cancelled appeals.

Plaintiff argues that the cancellation of his Form 602 renders the rest of the grievance procedure unavailable. The PLRA requires a prisoner to exhaust only those administrative remedies that are available. Exhaustion is not required "when circumstances render administrative remedies 'effectively unavailable.'" *Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010) (citing *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010)). As noted in *Sapp*, improper screening of an inmate's grievance, failing to provide grievance forms, and providing inaccurate information to an inmate during the grievance process can render administrative remedies unavailable. *Sapp*, 623 F.3d at 822 (citing cases); *see also Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009) (holding that if Plaintiff was unable to file grievance forms or if he was reliably informed that administrative remedies were not available, exhaustion is not required); *Brown*, 422 F.3d at 935.

There is nothing to support *Sapp*'s application in this context. Section 3084.6(e) expressly provides that a cancellation decision can be appealed through the final two steps of the grievance procedure, and the screening form confirms this (Doc. 46-1 at 11). This would have been the appropriate method for Plaintiff to point out any error in Williams' decision. Plaintiff, however, made no attempt to appeal the cancellation or to explain why Williams' reasoning was incorrect, and he offers no explanation for his failure to do so.

Plaintiff also appears to allege that Williams' failure to process his appeal as an emergency was improper. But Plaintiff's argument finds no support in the grievance procedure and he fails to explain how he was prevented from appealing the cancellation decision. The Court concludes that Plaintiff was afforded the opportunity to appeal the cancellation decision, but elected not to do so. His claim, therefore, is unexhausted.

### 2.  Plaintiff's December 18, 2012 Form 602–Appeal F-13-00045.

Plaintiff made a second attempt at exhaustion by submitting a Form 602 directly to the second level of review (Doc. 42-1 at 2-6).  Plaintiff specifically stated in this second Form 602, in several places, that he intended to "bypass" the first level of review because the appeals coordinator "has made all kinds of excuses to reject and cancel [his] appeals" (*id.* at 3).  This step, however, did not constitute proper exhaustion.  There is no provision in the grievance procedure that permits Plaintiff to bypass any step in the process for any reason.  *See Woodford*, 548 U.S. at 90 (proper exhaustion requires "using all steps that the agency holds out, and doing so properly").  This attempt to bypass the first level of the grievance process was rejected by the appeals coordinator in a notice dated January 7, 2013.  Two reasons were given: (1) "[y]ou have submitted the appeal for processing at an inappropriate level bypassing required lower levels of review," citing CCR 3084.6(b)(15), and (2) "[y]ou have exceeded the allowable number of appeals filed in 14 calendar day period pursuant to CCR 3083.1(f)."  Doc. 42-1 at 6.

The Court concludes that this second grievance cannot reasonably be construed as an appeal of the cancellation of Plaintiff's September 16, 2012 Form 602 under § 3084.6(e).  Plaintiff did not characterize the second document as an appeal of the September 16, 2012 grievance, but instead as a new grievance that sought to "bypass first level review."  Doc. 42-1 at 3.  Section 3084.6(b)(15) expressly prohibits attempts to bypass lower levels of review.  Moreover, had this second Form 602 been intended as an appeal, it would have been untimely because it was filed more than thirty days after the notice of cancellation issued on October 2.  *See* Cal. Code Regs. tit. 15, § 3084.8(b)(3) (inmate must submit appeal within thirty days of receipt of "unsatisfactory departmental response to appeal filed").  Plaintiff, who has successfully grieved other issues to completion (Doc. 42-2 at 6), was obligated to follow the proper appeal procedures.

Plaintiff appears to contend that some of his grievances have gone unanswered or were improperly addressed, and he therefore thought that advancing directly to the CBU was appropriate.  This argument is unavailing because there is no evidence that Plaintiff

attempted to and was prevented from appealing the cancellation decision as permitted by § 3084.6(e). Even assuming any of the grievances were improperly addressed, there is no evidence that Plaintiff was precluded from filing appeals or that he relied on any misinformation to his detriment. *Contra Nunez*, 591 F.3d at 1226 (excusing failure to exhaust where prison officials' failure to properly address prisoner's complaints "led [him] on an almost ten-month wild goose chase"). One mistake by a grievance officer does not absolve Plaintiff of the requirement to follow the proper procedures. In short, to properly exhaust his claims, Plaintiff must follow the CDCR regulations. *Jones v. Bock*, 549 U.S. 199, 200 (2007) ("The 'applicable procedural rules' that a prisoner must properly exhaust [are] defined by the prison grievance process itself.").

The Court finds that Plaintiff failed to exhaust his denial of access to the court claim in Count Seven. The Court will grant Defendants' motion for summary judgment and deny Plaintiff's motion.

**IV. Plaintiff's Motions.**

**A. Motions to Vacate.**

Plaintiff also seeks to vacate the Court's June 19, 2014 order dismissing Counts Two and Three as time-barred and the Court's September 12, 2014 order dismissing Wilkinson for failure to serve. The Court will deny the motions.

The Court will grant reconsideration of its prior non-appealable interlocutory order if the party seeking reconsideration makes a showing that: (1) there are material differences in fact or law from that presented to the Court and, at the time of the Court's decision, the party moving for reconsideration could not have known of the factual or legal differences through reasonable diligence; (2) there are new material facts that happened *after* the Court's decision; (3) there has been a change in the law that was decided or enacted *after* the Court's decision; or (4) the movant makes a convincing showing that the Court failed to consider material facts that were presented to the Court *before* the Court's decision. *Motorola, Inc. v. J.B. Rodgers Mech. Contractors*, 215

F.R.D. 581, 586 (D. Ariz. 2003). (emphasis added).[5]

### 1. Statute of Limitations Dismissal of Counts Two and Three.

In Counts Two and Three of his Complaint, Plaintiff alleged that in January 2009, Defendants Ward and Hudson told inmates working in the prison kitchen that Plaintiff had filed a grievance against the other inmates. Plaintiff alleged that Defendants' actions were taken in retaliation for a grievance Plaintiff filed against Ward. Defendants' actions led to multiple threats against Plaintiff and ended in an assault on Plaintiff by several inmates on July 9, 2009, which caused Plaintiff serious injury. Plaintiff originally filed suit against Ward and Hudson in March 2010, presenting deliberate indifference and retaliation claims (10-CV-0596-PHX-DGC (LOA)). Those claims were dismissed in October 2010 for failure to exhaust administrative remedies (Doc. 31, 10-CV-0596-PHX-DGC (LOA)). Plaintiff filed this action, again presenting his deliberate indifference and retaliation claims, on August 27, 2013. Plaintiff argued that appealing the Court's exhaustion decision in the 2010 action and filing a separate action in the Northern District of California tolled the statute of limitations. The Court found that those actions did not toll the statute of limitations and that his claim is time-barred (Doc. 28).

Plaintiff argues on reconsideration that he should not be punished for his error in initiating a lawsuit in the Northern District of California. Plaintiff alleges that the District Court in California abused its discretion by ordering Plaintiff to refile his case in Arizona. The Court finds that there is no basis for reconsideration. Even assuming that Plaintiff's Northern District of California lawsuit could toll the statute of limitations, that lawsuit

---

[5] Because this Court's orders of June 19, 2014 and September 12, 2014 did not "end [ ] the litigation on the merits and leave[ ] nothing for the court to do but execute the judgment," the challenged orders are not final judgments or appealable interlocutory orders. *Catlin v. United States*, 324 U.S. 229, 233 (1945). Thus, Plaintiff cannot avail himself of Rules 59(e) or 60(b) of the Federal Rules of Civil Procedure, which only apply to reconsideration of "final judgments and appealable interlocutory orders." *Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 466–67 (9th Cir. 1989). Even if the Court considered Plaintiff's Motions under the Rule 59(e) and 60 standards, Plaintiff would still not be entitled to relief.

1 only named one Defendant, Matthew Cate the former director of the California
2 Department of Corrections and Rehabilitation (*See* N.D. Cal. Case No. 4:11-cv-04535,
3 Doc. #1). Moreover, the Northern District of California action raised issues unrelated to
4 the July 9, 2009 incident (*id.*). And although Plaintiff referenced his original claims
5 against Ward and Hudson by case number, he did not present claims against either
6 individual, name them as Defendants, or discuss them or their conduct in the body of that
7 complaint. In short, the claims presented in the Northern District of California action are
8 unrelated to Plaintiff's claims against Ward and Hudson in this action and, as a result,
9 there is no basis for tolling the limitations period.

10 Likewise, Plaintiff's argument that his appeal of the 2010 exhaustion decision
11 tolled the statute of limitations is baseless because even assuming that Plaintiff's appeal
12 of this Court's October 6, 2010 lawsuit continued to toll the statute of limitations (a
13 doubtful proposition), the instant action was still untimely by several months. There is
14 simply no basis to conclude that this action is timely and Plaintiff's motion for
15 reconsideration must be denied. *See Little v. State,* 225 Ariz. 466, 240 P.3d 861, 867
16 (2010) ("Equitable tolling applies only in extraordinary circumstances and not to a garden
17 variety claim of excusable neglect." (citation and internal quotation marks omitted)).

18 **2.     Dismissal of Wilkinson Pursuant to Rule 4(m).**

19 Plaintiff also moves to vacate the dismissal of Wilkinson for failure to serve
20 (Doc. 44). He argues that despite the Marshal's three attempts to serve Wilkinson,
21 additional attempts at different times should be made.

22 Plaintiff is correct that incarcerated pro se plaintiffs proceeding *in forma pauperis*
23 are entitled to rely on the U.S. Marshal for service of summons and complaint and cannot
24 be penalized by dismissal of the action for failure to effect service where the Marshal has
25 failed to perform his duties. *Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir. 1994)
26 (citing *Puett v. Blandford*, 912 F.2d 270, 273 (9th Cir. 1990)), *abrogated on other*
27 *grounds by Sandin v. Conner*, 515 U.S. 472 (1995). But there is no evidence here that the
28 Marshal failed to perform his duties; indeed, personal service was sought three times

unsuccessfully (Doc. 32).

More importantly, on a motion for reconsideration, Plaintiff must show that there is a change in law or fact that arose *after* the Court's decision. This Plaintiff cannot do. He completely failed to respond to the Court's August 11, 2014 Order to Show Cause and did not file a timely motion for reconsideration of the Court's September 12, 2014 order dismissing Wilkinson. *See* L.R. Civ. 7.2(g) (motions for reconsideration must be filed within 14 days). Plaintiff offers no justification for his failure to timely respond to the Court's orders. That failure, coupled with the Marshal's good faith effort to serve Wilkinson, militate against an extension of time for service. Plaintiff's Motion to Vacate dismissal of Wilkinson will therefore be denied.

### B. Motion for Preliminary Injunction.

Plaintiff seeks a preliminary injunction regarding access to copies, files, paper, pens, and medical care (Doc. 43). Because this action must be dismissed, the Court will deny Plaintiff's motion.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to this action.

(2) Plaintiff's Motion to Vacate the Court's June 19, 2014 Order (Doc. 30) is **denied**.

(3) Defendants' Motion for Summary Judgment (Doc. 34) is **granted**. Plaintiff's Cross-Motion for Summary Judgment (Doc. 42) is **denied**. Plaintiff's claims in Count Seven are dismissed without prejudice for failure to exhaust.

(4) Plaintiff's Motion to Vacate the Court's September 12, 2014 Order (Doc. 44) is **denied**.

(5) Plaintiff's Motion for an Order to Show, Temporary Restraining Order, and Preliminary Injunction (Doc. 43) is **denied**.

(6) Defendants' Motion to Stay Dispositive Motion Deadline (Doc. 55) is **denied as moot**.

(7) Because no claim remains, this action is dismissed and the Clerk of Court

1  must enter judgment accordingly.
2  Dated this 30th day of March, 2015.

*David G. Campbell*
Honorable David G. Campbell
United States District Judge

- 12 -